IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAURIE J. OLSON,

                           Plaintiff,                OPINION AND ORDER

   v.

                                             07-cv-576-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Laurie J. Olson seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).

Plaintiff contends that her case should be remanded because the Appeals Council erroneously refused to review the administrative law judge's decision in light of the additional evidence she submitted after the hearing decision.  In the alternative, plaintiff contends that the evidence that was before the administrative law judge at the time he rendered his decision fails to provide substantial support for his residual functional capacity

1

and credibility determinations.  Plaintiff also asserts that the judge improperly rejected the opinions of her treating providers and failed to ask the vocational expert whether his testimony was consistent with the <u>Dictionary of Occupational Titles</u>.

I find that the Appeals Council did not err as a matter of law in applying the regulation related to additional evidence.  Therefore, the Appeals Council's denial of plaintiff's request for review was discretionary and not reviewable by this court.  However, as explained in detail below, I find that the additional evidence submitted by plaintiff is new and material and that good cause exists for plaintiff's failure to incorporate the evidence into the record before the administrative law judge.  Accordingly, I will remand this case pursuant to sentence six of § 405(g) without reaching the merits of the administrative law judge's determination.  On remand, the administrative law judge should consider the additional evidence in weighing the opinions of plaintiff's treating providers and assessing plaintiff's credibility and residual functional capacity.

The following facts are drawn from the administrative record (AR):

FACTS

A.  <u>Background and Procedural History</u>

Plaintiff was born on April 25, 1967 and has an eleventh grade education and past work experience as a waitress, scale person and fork lift driver.  AR 53, 67, 72.  She applied

2

for Social Security Disability Insurance Benefits on February 9, 2004, alleging that she had been unable to work since October 19, 2003 because of low back pain and her status after a fusion surgery. AR 65. After the local disability agency denied her application initially and upon reconsideration, plaintiff requested a hearing. The Office of Hearings and Appeals acknowledged plaintiff's hearing request in a letter dated December 1, 2004. AR 39-40. In early 2005, plaintiff remarried and changed her last name to Olson. The Office of Hearings and Appeals was aware of plaintiff's name change at least by November 15, 2005. AR 43.

The hearing was held on January 9, 2006 before Administrative Law Judge Paul D. Tierney in Eau Claire, Wisconsin. The administrative law judge heard testimony from plaintiff, who was represented by a lawyer. AR 671. He also heard testimony from a neutral medical expert and a neutral vocational expert. AR 692-715. On April 23, 2006, the administrative law judge issued his decision, finding plaintiff not disabled. AR 13-21.

On May 16, 2006, plaintiff submitted the following to the Office of Hearings and Appeals: 1) a report by Dr. Patrick Healy related to his September 24, 2004 independent medical examination of plaintiff; and 2) an April 10, 2006 vocational assessment prepared by Jeanne Krizan, a vocational expert. AR 418-36. At some point after the hearing, plaintiff learned that a significant number of her medical records from 2004 to 2006 were not part of the record. On June 1, 2006, plaintiff submitted medical records dated from April 23, 2004 to March 31, 2006. AR 437-668. Apparently, the state agency had requested records

3

for "Laurie J. Nelson, AKA Laurie Johnson," the names plaintiff provided in her application for benefits. AR 53. Beginning on or around March 8, 2005, plaintiff's treating providers began filing her records under her married name. Given plaintiff's name change, medical records dated after March 8, 2005 were not sent to the Office of Hearings and Appeals.

On August 10, 2007, the Appeals Council found that the additional information submitted by plaintiff did not provide a basis for changing the administrative law judge's decision and denied plaintiff's request for review, making the administrative law judge's decision the final decision of the commissioner. AR 6-9.

## B. Medical Evidence

Plaintiff injured her back at work in 1993. AR 199. In January 1994, she was diagnosed with a herniated disc at L4-5 and underwent a lumbar laminectomy and disc removal that same month. AR 288-90. She received social security disability benefits until October 1995, when she successfully returned to work. AR 13.

On October 19, 2003, plaintiff went to Luther Hospital emergency room with a sudden return of severe back pain. AR 139-141. Dr. Michael Hartman noted that plaintiff had significant paraspinous muscle spasm and tenderness to palpitation in the mid thoracic region. He prescribed intramuscular Toradol for plaintiff, gave her a prescription for Flexeril and Vicodin and advised her to follow up with her primary care physician. AR 141.

On October 23, 2003, plaintiff was seen by Dr. David Nye. He concluded that plaintiff had limited back range of motion and tenderness to palpation in the spine but normal sensory, muscular and reflex findings. He noted that her gait and station were unremarkable and recommended that she continue with conservative treatment measures. AR 229-30.

On October 31, 2003, plaintiff was evaluated and treated at the physical therapy department for pain in her lower back. A magnetic resonance imaging scan was negative for bony and neurological findings. AR 144. Plaintiff rated her pain at an eight out of 10 and described it as a constant sharp pain radiating from her lower back to her posterior thigh and anterior left lower leg. The physical therapist noted that plaintiff was overweight and deconditioned and that her gait was slow, antalgic and pain provoking, especially with weight bearing over the left lower extremity. AR 145. Plaintiff did not return for additional physical therapy. AR 143.

On November 25, 2003, plaintiff was seen by Dr. David Usher, her family doctor. Plaintiff reported that her back pain had not improved. She reported that she was able to stand, make dinner and walk in the grocery store. Plaintiff did not want to be seen by anyone in the pain clinic. AR 220.

A December 4, 2003 x-ray of plaintiff's lumbar spine revealed a disk space narrowing at L4-5 with mild end plate sclerosis and small anterior osteophytes. AR 249-51. A

December 2003 myelogram showed that plaintiff had right central disc protrusion causing decreased filling of the right L5 nerve root sleeve.  AR 248.

On January 6, 2004, plaintiff was evaluated by Dr. James Manz, who noted that plaintiff's weight was stable.  AR 368.  Plaintiff's gross motor testing was full throughout both upper and lower extremities and in all muscle groups.  Plaintiff's sensory examination was normal.  She had positive straight leg raising and mild sciatic tenderness. AR 369.  Dr. Manz gave plaintiff an epidural steroid injection.  AR 341.

On February 16, 2004, Dr. Andrew Floren saw plaintiff after she was referred to him by Dr. Manz.  Floren completed a worker's compensation injury report for plaintiff.  He noted that plaintiff was scheduled for surgery with Dr. Manz on March 4, 2004 and would not be able to work for several months afterwards.  Floren stated that it was his medical opinion that plaintiff's condition was directly related to her 1993 injury and that there was no evidence of any significant secondary injury, episode or recurrence.  AR 200-01.

On March 4, 2004, Dr. Manz performed reconstructive surgery at L4-5 on plaintiff's back.  AR 345.  Plaintiff tolerated the surgery with no complications.  AR 349.  On April 23, 2004, Dr. Manz examined her and noted that she was in much less pain than she was prior to the surgery.  AR 184.  In May 2004, Dr. Floren saw plaintiff and noted that she was doing well post-operatively.  He remarked that she had a slow but normal gait.  AR 181.  On June 25, 2004, Dr. Manz examined plaintiff.  He noted that plaintiff was neurologically intact in

both lower extremities and her sensory examination was normal.  AR 180.  On July 14, 2004, Dr. Floren met with Dr. Manz and Dr. Donald Bodeau concerning plaintiff's status.  They set a goal of returning plaintiff to light duty work in the next several weeks.  AR 179.

On October 5, 2004, Dr. Manz examined plaintiff and concluded that she was doing reasonably well.  Plaintiff was taking only three Ultram a week and was not taking any other medications.  Plaintiff reported no new numbness or tingling and only occasional achiness of a muscular nature near the incision site.  Her neurological examination was normal.  AR 172.

On July 26, 2005, physical therapist Georgia Davis completed a functional capacity evaluation of plaintiff.  She concluded that plaintiff was currently functioning below the sedentary level.  AR 403.  Davis noted that plaintiff occasionally could lift and carry five pounds.  She also noted that plaintiff would need the opportunity to change positions at will.  She concluded plaintiff had no ability to climb, stoop, twist, crouch, kneel, crawl or balance and only occasional ability to sit, stand, walk and reach.  AR 404.  Davis noted:  "it is questionable whether plaintiff could maintain a competitive pace or productivity level on a full-time basis (based on her limited tolerance to functional testing and her need for periodic breaks over two hours of testing)."  AR 405.  In her summary of the testing, Davis stated:

> Tests of grip strength using the Jamar dynamometer were used during functional testing as a tool to assess maximum voluntary effort.  The results of Ms. Olson's grip tests were equivocal.  However throughout the assessment she was observed to be

7

> consistent in her movement patterns and these patterns
> correlated well with her subjective reports.

AR 405.  In her assessment, Davis noted that the grip strength test might be an indicator of

submaximal effort.  AR 410.

On July 28, 2005, Dr. Floren stated that plaintiff was "very likely fully disabled."  He

restricted plaintiff from work that required bending, kneeling, squatting, crouching, twisting

or climbing of ladders.  He further noted that she could not lift more than five pounds and

only occasionally could reach forward or above the shoulder, sit, stand or walk.  AR 411.


C.  Consulting Physicians

On July 20, 2004, state agency consulting physician Dr. Michael Baumblatt assessed

plaintiff's physical residual functional capacity, noting that plaintiff had been diagnosed with

status post L4-5 fusion.  He concluded that plaintiff could lift 10 pounds frequently and 20

pounds occasionally.  He also concluded that plaintiff could stand or walk six hours in an

eight-hour work day and sit six hours in an eight-hour work day with no limitations on

pushing and pulling.  AR 264-271.  On November 9, 2004, another state agency consulting

physician affirmed this assessment.  AR 271.

D. <u>Hearing Testimony</u>

Plaintiff testified that she lives with her husband, her nine-year old son and a foreign exchange student.  AR 673.  She worked for Fleet Guard Nelson as a fork lift driver and left that job on October 18, 2003 because she woke up and could not move.  AR 675.  She stated that she went to the emergency room that same day because she was in extreme pain in her lower back and legs.  AR 676.  Plaintiff testified that she had a worker's compensation case pending with regard to her back.  She also stated that she was receiving $1,600 a month in long-term disability benefits from Fleet Guard Nelson.  AR 679.

Plaintiff testified that she had surgery in March 2004 but that she still had pain.  She stated that she took pain medication every day and had undergone physical therapy. Plaintiff testified that the pain clinic was monitoring her medications.  AR 678.  She stated that she took two naps a day because of the medication.  AR 683.  Plaintiff testified that she was able to drive unless she had taken pain medication.  AR 674.

Plaintiff testified that she could stand only10 minutes, walk 20 minutes and sit 20 minutes at one time and could not lift 10 pounds.  AR 680.  She stated that she did chores around the house but had to have assistance from her husband and son.  AR 681.  Plaintiff testified that she was able to do the shopping because she could lean on the grocery cart. She also planted six plants in her garden.  AR 682.  Plaintiff plays cards, watches television and goes to lunch with her parents or a girlfriend twice a month.  AR 685.  She also testified

that she and her husband go out to eat at restaurants.  Plaintiff testified that she can dress herself 90 percent of the time but that she has to have help getting in and out of the bathtub.  AR 686.

In response to questions from her attorney, plaintiff said that she received social security disability insurance benefits for a short time in 1992 or 1993.  AR 688.  Plaintiff testified that her disabling impairment arose from a 1993 injury and that she had two surgeries:  a laminectomy in 1994 and a fusion in 2004.  AR 690.

The neutral medical expert, Dr. Andrew Steiner, testified that plaintiff had injured her back in 1993 and had been diagnosed with degenerative disc disease.  He noted that plaintiff had a laminectomy, epidural steroid injections, nerve root injections and an anterior and posterior fusion at the L4-5 level.  He testified that the record indicated that plaintiff was healing and stable in October 2004, with no lingering neurological or strength loss.  In Dr. Steiner's opinion, plaintiff's back condition would not meet or equal a listed impairment, given the absence of any lingering neurological deficits.  AR 692-93.  He testified that plaintiff could perform sedentary work with limited bending, twisting, stooping, kneeling, crawling, crouching and climbing.  Dr. Steiner said that he disagreed with the restrictions imposed on plaintiff by Georgia Davis because the reliability of that evaluation was questionable.  He testified that plaintiff extended sub-maximal effort during the testing.  AR 696.  Steiner also did not agree with the restrictions that Davis and Dr. Floren had given

plaintiff because her medical conditions did not support such severe limitations.  He noted that he believed that Dr. Floren had based his limitations for plaintiff on Davis's functional capacities evaluation, which he found unreliable.  AR 697.

Richard Willette testified as neutral vocational expert.  AR 704.  The administrative law judge asked Willette whether plaintiff could perform her past work if she could lift ten pounds occasionally and less than 10 pounds frequently; sit or stand as needed during the course of the day; occasionally twist, bend, stoop, kneel, crawl squat and climb stairs; and not work around ropes or scaffolds.  In response, Willette stated that plaintiff could not perform her past relevant work.  AR 709.  However, he further testified that she could perform 2,000 sedentary counter clerk jobs, 3,000 sedentary interview clerk jobs, 4,000 sedentary information clerk jobs and 4,400 sedentary telemarketer jobs.  AR 710.

The administrative law judge asked plaintiff whether she could use a computer and type.  She testified that she was not trained in typing and did not use the computer much. The administrative law judge then asked Willette whether this limited ability would affect the jobs he had listed.  AR 711.  Willette testified that with these limited skills, plaintiff still could perform the counter clerk jobs and 2,000 of the 4,000 information clerk jobs but could not perform the interview clerk or telemarketer jobs.  Willette testified that he had relied on information available on the O-Net, which contains the terms of the Dictionary of Occupational Titles, and labor market statistics for the State of Wisconsin.  AR 712.

E.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. § 404.1520.  At step one, he found that plaintiff did not engage in substantial gainful activity at any time relevant to his decision.  At step two, he found that a plaintiff had severe impairments of degenerative disc disease of the lumbar spine status post discectomy and fusion at the L4-5 level in March 2004.

Relying on the testimony of the medical expert and the reports of the state agency medical consultants, the administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 43.

At step four, the administrative law judge determined that plaintiff had the residual functional capacity to perform work requiring lifting up to 10 pounds occasionally; a sit or stand option; occasional twisting, bending, stooping and stair climbing; and no work around scaffolds or ladders.   In determining plaintiff's residual functional capacity, the administrative law judge considered plaintiff's subjective complaints and acknowledged that her impairments impose a degree of pain and limitation.  However, he did not find plaintiff's testimony concerning her inability to work to be credible.  The administrative law judge concluded that the objective medical evidence did not demonstrate that plaintiff had

12

physical abnormalities that would result in her alleged limitations. Reciting the medical evidence from 2004, he noted that plaintiff's back condition had shown major improvement and minimal need for pain medication or other treatment after a reasonable period of healing and recovery from surgery. The administrative law judge also noted that plaintiff was able to withstand her pain without strong medication. He inferred from her infrequent doctor visits after October 2004 that she was satisfied with her recovery and treatment.

In assessing plaintiff's credibility, the administrative law judge further noted that her daily activities and lack of ongoing treatment were not consistent with her testimony concerning her limitations. He wrote that plaintiff was able to do light household chores, garden with assistance from her husband, go out to lunch, read, watch television, use her computer, ride in a car for two hours and drive for one hour. With regard to plaintiff's work history and motivation to return to gainful work, the administrative law judge noted that because plaintiff was receiving long-term disability and had a pending worker's compensation claim, she might be disinclined to seek employment.

In determining plaintiff's residual functional capacity, the administrative law judge considered the opinion of Georgia Davis, plaintiff's physical therapist. He discounted the results of the evaluation because there was an indication during testing that plaintiff gave sub-maximal effort and there were inconsistencies between the test results and plaintiff's self-reported abilities and daily activities. The administrative law judge pointed out that plaintiff

13

shopped, prepared meals, completed household chores, cared for her children, had lunch with friends, used the computer, read, walked up to two miles and drove a car.

The administrative law judge gave great weight to the opinion of the medical expert, Dr. Steiner, because he was experienced in physical medicine and rehabilitation, knowledgeable of the Social Security disability program and medical listings and had had an opportunity to review all the medical evidence and hear the testimony. The administrative law judge noted that Steiner testified that there were no diagnostic test results or physical examination results in the record supporting the extreme limitations assessed by Davis or Dr. Floren. Dr. Steiner concluded that plaintiff could perform sedentary work with occasional bending, crawling, stooping crouching, stair climbing and kneeling. Although the state agency consulting physician concluded that plaintiff could perform light work, the administrative law judge found that plaintiff could perform sedentary work with a sit or stand option and only occasional twisting, bending, stooping and stair climbing.

At step five, the administrative law judge found that plaintiff was not able to perform her past work but that she could perform a significant number of other jobs in the economy, namely counter clerk and information clerk. In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles. AR 19.

F.  Post-Hearing Evidence

On September 24, 2004, Dr. Healy performed an independent medical examination on plaintiff (whom he referred to as Laurie Nelson) at the request of her attorney.  Dr. Healy reported that plaintiff was still healing from her surgery but he expected her to have significant disability in her lumbar spine and be under permanent work restrictions.  AR 426.

Between October 2004 and April 23, 2006, plaintiff visited the Midelfort Clinic 18 times.  Although plaintiff experienced some improvement by December 2004, she reported worsening lower back pain radiating down her leg on January 10, 2005.  She began physical therapy but received only temporary relief.  On March 10, 2005, Dr. Floren prescribed amitriptyline for plaintiff to take at night.  The amitriptyline made her drowsy.  On May 31, 2005, Dr. Manz's nurse reported that the x-rays from plaintiff's last visit showed no obvious changes.  Because plaintiff's pain was worsening, Manz ordered a myelogram and a CT scan.  The tests did not show abnormalities with her implant.  Dr. Manz recommended plaintiff go to the pain clinic instead of undergoing further surgery.  Plaintiff was given morphine for pain relief.

Following a motor vehicle accident in October 2005, plaintiff began taking MS Contin and Vicodin, which made her drowsy.  AR 438-474, 528.  Although plaintiff continued to report lower back pain up to the date of the hearing, a nurse at the pain clinic noted on February 2, 2006 that plaintiff had just returned from a vacation in Florida.  On

15

vacation, plaintiff was able to participate in activities at Disney World, Busch Gardens and Sea World quite well.  AR 518-19.

In connection with her worker's compensation claim, plaintiff sought a vocational assessment from Krizan, a vocational expert, on April 7, 2006.  In her April 10, 2006 report, Krizan stated that given plaintiff's vocational profile and Dr. Floren's assessed limitations, plaintiff would not likely benefit from vocational rehabilitation.  AR 434.


OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

16

commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

B.  <u>Analysis</u>

1.  <u>Additional evidence</u>

Plaintiff asserts that the Appeals Council erred as a matter of law in not remanding her case pursuant to 20 C.F. R. § 404.970(b), which provides:

> If new and material evidence is submitted the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrtaive law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings or conclusion is contrary to the weight of the evidence currently of record.

17

The Appeals Council stated in its decision that the additional evidence submitted by plaintiff did "not provide a basis for changing the administrative law judge's decision."  AR 6-7. Plaintiff acknowledges that the Appeals Council considered the additional evidence and asserts instead that the Council erred in refusing to review the administrative law judge's decision.  Dkt. #7 at 20; dkt. #9 at 14-15.  However, the Council's decision whether to review is discretionary and unreviewable.  Perkins v. Chater, 107 F.3d 1290, 1294 (7th Cir. 1997); Eads v. Secretary of the Department of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993); Damato v. Sullivan, 945 F.2d 982, 988 (7th Cir. 1992).  A district court may review an Appeals Council decision denying a plaintiff's request for review *only* when that refusal rests on a mistake of law, such as when the Appeals Council concludes that additional evidence was not material.  Perkins, 107 F.3d at 1294; Eads, 983 F.2d at 817.

In the instant case, the Appeals Council did not say explicitly that it found plaintiff's additional evidence to be new and material.  However, it is reasonable to infer from the Council's statement and action that it made this preliminary finding, as required by the regulation.  Kleinhans v. Apfel, 99-C-0328-C.  Moreover, the Council did not find expressly to the contrary.  Cf. Nelson v. Bowen, 855 F.2d 503, 505 (7th Cir. 1988) (Appeals Council's decision reviewable where it found expressly that additional evidence "not material").  Accordingly, the administrative law judge's decision becomes the final decision reviewed

under § 405(g).  Perkins, 107 F.3d at 1294.  This court can not consider the additional evidence in that review.  Eads, 983 F.2d at 817.

As the parties note, however, plaintiff has further recourse under sentence six of § 405(g).  Eads, 983 F.2d at 817.  To obtain a remand under sentence six, plaintiff must show that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'"  Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir.1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626, (1990)).  However, a medical report or evaluation based on existing evidence that was part of the record at the time of the hearing is not "new."  Jens v. Barnhart, 347 F.3d 209, 214 (7th Cir. 2003); Perkins, 107 F.3d at 1296; Sample, 999 F.2d at 1144.  Evidence is material if it gives rise to a "reasonable probability" that the commissioner would have reached a different conclusion had the evidence been considered.  Perkins, 107 F.3d at 1296.  To be material, new evidence must relate to the claimant's condition "during the relevant time period encompassed by the disability application under review."  Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990).

Plaintiff's additional evidence consists of an April 10, 2006 vocational assessment performed by Krizan; a September 24, 2004 independent medical examination performed by Dr. Healy; and medical records dated between 2004 and 2006.  Because Krizan

performed a vocational assessment of plaintiff after the hearing and based her findings on evidence contained in the hearing record, her report cannot be considered new.  Jens, 347 F.3d at 214.  Neither can Dr. Healy's report and plaintiff's medical records, because they, too, were in existence at the time of the hearing.  Plaintiff argues that because her providers failed to send records filed under her married name, she had good cause for not incorporating the above evidence into the record at the time of the hearing.

Plaintiff's argument is not persuasive with respect to Krizan's and Healy's reports, both of which were prepared at plaintiff's request and sent to her attorney.  Further, Dr. Healy identified plaintiff in his report by her former name, Johnson.  Because plaintiff did not have good cause for not submitting these reports in a timely manner, I need not address whether the reports are material.

However, plaintiff had good cause for failing to submit the medical records in a timely manner.  Plaintiff requested a hearing in late 2004.  The Disability Determination Bureau requested plaintiff's medical records under the name "Laurie Nelson AKA:  Laurie Johnson," AR 171, without knowing that in early 2005, plaintiff had remarried and changed her last name to Olson.  Because plaintiff's treating providers had filed her records under her married name as of March 8, 2005, records from after that date were never sent.  Plaintiff supplemented the record after the hearing, as soon as she learned of the missing records.

20

The medical record evidence submitted by plaintiff to the Appeals Council meets the materiality requirement for remand under sentence six.  In making his credibility determination, the administrative law judge noted that plaintiff's back condition had improved and that she was not taking strong pain medication.  He also found that her minimal doctor visits after October 2004 suggested that she was satisfied with her recovery and treatment and that she was not taking strong medications.  In rejecting the opinions of Davis and Floren, the administrative law judge referred to Dr. Steiner's testimony that there were no diagnostic test results or physical examination results in the record to support those opinions.  However, the medical records submitted to the Appeals Council show that plaintiff was seen 18 times at the Midelfort Clinic between October 2004 and the date of the administrative law judge's decision, April 23, 2006.  AR 438-474.  These records also indicate that plaintiff took MS Contin and Vicodin, which were making her drowsy.  AR 471, 528.  Had the administrative law judge considered these records, there is a reasonable probability that he may have accorded greater weight to the treating providers' opinions, found plaintiff credible and made a different residual functional capacity determination. Accordingly, I will remand this case to the commissioner for consideration of the additional medical record evidence submitted by plaintiff to the Appeals Council.

2.  Plaintiff's other challenges

Plaintiff also raises a number of challenges to the administrative law judge's decision. She contends that the administrative law judge erroneously rejected the opinions of Dr. Floren and Davis, made an improper credibility determination and residual functional capacity assessment and did not meet his duty under Social Security Ruling 00-4p with regard to the vocational expert's testimony.  I decline to reach plaintiff's objections because the administrative law judge may make alternative findings on remand after considering the new and material evidence submitted by plaintiff.  On remand, the administrative law judge should consider the additional evidence in assessing plaintiff's credibility, weighing the opinions of her treating providers and making his residual functional capacity determination.  The administrative law judge also should comply with his obligation to ask any vocational expert who may testify whether that testimony is consistent with the Dictionary of Occupational Titles.

ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, denying plaintiff Laurie Olson's applications for disability insurance benefits

22

and supplemental security income is REVERSED AND REMANDED pursuant to sentence

six of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered this 29th day of May, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge

23